JOHN D. SPITLER, Appellee, v. PERRY TOWN LOT AND
  IMPROVEMENT COMPANY, Appellant.

VENDOR AND PURCHASER: Delay as Barring Rescission. The
1  right of a purchaser of property, even though it be non-
   perishable—real estate—to rescind the contract for false repre-
   sentations, howsoever reprehensible, is waived, as a matter
   of law, by a delay of a full year after acquiring full knowl-
   edge of all material facts.

TRIAL: Submission of Established Defense. The vice of submitting
2  to the jury an unquestionably established defense is not cured
   by the fact that the instructions were correct in form.

VENDOR AND PURCHASER: Rescission—Nonprejudice as Avoid-
3  ing Delay. Vendee's failure to attempt rescission of a con-
   tract of purchase for a full year after securing full knowledge
   of all the facts, may not be avoided by the fact that vendor
   has not been prejudiced by the delay. For a much greater
   reason, there is no avoidance when vendor has, in the mean-
   time, lost the rent of the property, and, in case of rescission,
   must lose the "wear and tear" on the property, for which
   rent vendee makes no money tender until after suit brought.

VENDOR AND PURCHASER: Ratification of Contract. A vendee
4  may not rescind a contract of purchase on which he has made
   a payment at a time when he knew, or ought to have known,
   the truth of all relevant facts.

*Appeal from Perry Superior Court.*—W. W. CARDELL,
                      Judge.

SEPTEMBER 29, 1920.

SUIT to rescind on account of fraudulent representa-
tions, alleged to have induced plaintiff to purchase certain
town lots. He has recovered the purchase price, and de-
fendant appeals.—*Reversed.*

*Dugan & Dugan,* for appellant.

*Thos. M. Tiernan* and *W. H. Winegar,* for appellee.

SALINGER, J.—I.  We shall assume that the representa-
tions which the appellee relies upon are actionable, false
representations.  These seem to be that the defendant com-
pany falsely represented to plaintiff, when
he purchased the lots: (1) that, within
two years thereafter, a street railway would
be constructed and operated between the
main business portions of Perry and the
Dilenbeck Addition, lying to one side of the city; (2) that a
contemplated steel plant, then in the course of construc-
tion, would be finished, and would employ a certain number
of men that would live in the addition; (3) that a college
would be constructed and in operation on a definite loca-
tion in said addition.  We shall further assume that, in
reliance, the plaintiff purchased at a price the lots would
be worth with said improvements constructed, and in oper-
ation.  The avoidance presented by defendant is that plain-
tiff has forfeited the right to rescind, because he has waited
an unreasonable length of time after discovering the alleged
fraud, before he attempted to rescind.  The appellant com-
plains that this avoidance was submitted to the jury, and
says said defense was established, as matter of law.  Ap-
pellee answers that whether there had been such unreason-
able delay was fairly a jury question, and that the jury
could find, as it did find, that notice of rescission was
served soon after plaintiff learned definitely that said
representations were not to be complied with.  Appellee
tells us there might be some merit in the claim of appellant
if it had clean hands, but that the defense or avoidance is
not available, because the cry of "unreasonable delay" is
made "in order to cover the dirt and grease of fraud and
deception upon his own hands," that appellant should re-
ceive slight consideration, "blackened as it is with its
fraud and deception, with no other defense than simply
that its victim did not act with the same promptness and

1. VENDOR AND
PURCHASER:
delay as
barring
rescission.

capacity that a captain of industry like the president of the appellant company might have used."

In every case where it was held rescission was barred for delay, it may, perhaps, have been possible to say that it enabled the other party "to enjoy the fruits of its fraud and misrepresentations simply because its victims did not realize as quickly as the other party did, that he was being defrauded." The remedy of *rescission* may not be availed of even though the thing sought to be rescinded *is* a fraud committed by the other party. It must necessarily follow, then, that, if there was unreasonable delay, that will defeat rescission although the other party does not have "clean hands." The existence of such uncleanliness will not bar the *defense* of unreasonable delay in rescinding. With what the effect of a fraud may be where he who commits it is seeking *affirmative* relief, is a question we do not have to deal with on this appeal.

### 1-a

Appellee argues that appellant cannot complain that his defense was not submitted to the jury, because the question of reasonable time, waiver, and estoppel, urged by appellant in answer, were submitted in proper instructions. How does that sustain submission to the jury? If the defense was established as matter of law, it should not have been submitted to the jury at all. And it is no answer that the instructions which submitted it were correct in form.

2. TRIAL: submission of established defense.

II. It is elementary that any acts on part of the buyer which clearly indicate an attempt to abide by the contract of sale are evidences of affirmance of the contract, and work a waiver of the right to rescind. 39 Cyc. 1292. But whether such acts are sufficient to establish either affirmance or waiver is ordinarily a jury question. We have held that the question of reasonable time is always for the jury, where there is a dispute in the facts, if under circumstances the jury would be warranted in holding the rescission to be within a reasonable time. *Mattauch v. Riddell Auto.*

*Co.*, 138 Iowa 22, 24. We do not challenge the correctness of the statement in *Duetzmann v. Kuntze*, 147 Iowa 158, 162, that "what is a reasonable time necessarily depends on circumstances." But most fact issues on the law side are for the jury. Nevertheless, any fact question may, in the absence of conflict, become a law question. And we have held that, on some states of evidence, the very question at bar will become one for the court. In *Moore v. Howe*, 115 Iowa 62, 65, we said:

"Sometimes this question as to what is a reasonable time is for the jury; but we have no hesitancy in saying, as a matter of law, that the retention of the retail stock of goods, and the sale therefrom in the ordinary course of business and appropriating the proceeds thereof, for nearly four months after acquiring knowledge of the alleged fraud, will preclude a subsequent rescission of the contract. Such treatment of the property is an unequivocal election to accept the goods and carry out the contract. Taking any benefit or changing the condition of the property bought after learning of the fraud, has been adjudged a waiver of the right to rescind."

In *Mattauch v. Riddell Auto. Co.*, 138 Iowa 22, appellant bought an automobile in August, 1905. In September following, he had made up his mind the machine was not satisfactory, and didn't work; in December, he offered to rescind, by tendering a return, and this court said:

"Counsel for appellant contend that the question as to reasonable time is for the jury; but, where there is no conflict in the evidence as to the facts, and it appears that the time which has elapsed between a knowledge, on part of the buyer, of the defects in the article warranted, and the time of the attempted rescission, is so great that under no circumstances appearing in the evidence the jury would be warranted in holding the rescission to be within a reasonable time, the court may decide the question as a matter of law, and deny plaintiff relief on the theory of rescission."

And we do not deem it to be controlling, but merely

adventitious, that, in the cases where such delay has been held to be unreasonable as matter of law, there was most often involved property that was more or less perishable; nor that the ownership was constantly changing, for which reason it was impossible to place the parties *in statu quo.* We rule there may be cases wherein it may be held, as matter of law, that the delay was unreasonable, even though the property was not perishable, and was not constantly changing hands.

III.   This brings us to the substance of the appeal. Appellee says that these representations were not as to existing facts, but statements as to what was to occur in the future.   He concedes that, if the representations had been as to existing facts, then, immediately on discovery of their falsity, it would have been his duty to rescind promptly.   But he argues that, as these representations deal with the future, it might, in certain circumstances, remain an open question, even after discovery of falsity, whether the thing represented might not still come true later.   Appellee concedes that two years was the time limit for testing out.   He says one of the representations was that a street railway would be built and in operation within two years from the time of the contract.   He concedes this time has expired about a year before the rescission. His attempted avoidance is that the railway company had some material on the ground, and that he "no doubt hoped each day to see the operation of construction begin, and, naturally relying upon the integrity of the officers of the appellant company, would delay rescinding, giving them all the chance possible."

Surely, all this did not justify waiting a year after it was known that the railroad was neither built or in operation.   The representations as to the steel plant, appellee meets by saying that the building was actually constructed, "and was still upon the premises, being operated more or less in the winter of 1916, a very short time before rescission, and the evidence shows that there was no attempt to wreck the steel plant construction until the winter of 1916."

If the building was "actually constructed," there was no false representation. If it was not constructed,—if there was no "steel plant" within the meaning of the representation (a plant employing 200 men),—then action was delayed much too long to justify rescission, even though there was no attempt to wreck what construction was on the ground. With another representation, the one that a college would be erected, constructed, and in operation, appellee deals in like manner. He says:

"The lots upon which it was represented the college was to be constructed, were still there, and apparently still owned by Jones, who was to construct the college. The appellee would have in mind many things that might delay the construction of a college, and would naturally, under the circumstances, wait until all hopes had vanished."

The most remarkable avoidance is this:

"Certain persons who had purchased lots brought suit in the Supreme Court for damages on account of the same alleged fraudulent representations. Opinions in these suits were handed down in the Supreme Court in October, 1916, some six months after the rescission by this appellee. As the appellant company in each case was disputing the question of false representations and the right of rescission, this appellee could not be positive that he had a suit upon that ground until the Supreme Court had handed down its opinion, which was some six months after rescission by this appellee."

In other words, appellee should be excused for delaying a rescission because he was moved to wait on a decision of this court as to what his rights were. Unfortunately, he did rescind some six months before he had that information. If he was moved to rescind six months before the opinion was filed, why was he not moved to act, say, a year before the opinion was filed? We are firmly persuaded that, if the plaintiff had knowledge that the alleged and so-called representations were false, he delayed action so long as that the particular remedy of rescission is not available to him.

IV. What of knowledge?

In the spring of 1915, both plaintiff and his wife knew that suits had been begun against this present defendant to recover damages for buyers of lots, on the ground that said railway had not been built, and that there were misrepresentations as to the college and the steel plant. One Kirkwood is a close, personal friend of plaintiff's. In January, 1915, and during the spring of 1915, Kirkwood and others sued, as aforesaid, and asked return of their purchase money. At the time stated, Kirkwood talked these matters over with plaintiff. He told plaintiff the grounds on which he (Kirkwood) would ask a recovery. These suits were tried, and had newspaper publicity. In them, Jones testified he had no intention to build a college, and had given up the plan. At the time of the talks with Kirkwood, it was commonly known that the steel plant had shut down; commonly known that a receiver for it had been appointed, about August or September, 1914, and on the grounds of insolvency; that the so-called plant was operated by the receiver until the early part of November, 1914, and was at that time advertised for sale.

There is controversy on whether the attempt to rescind was made April 6, 1916, or in May, 1917. Appellee made no offer to make allowance for use of the property occupied by him, or to account for any rent, until the first trial of the cause. On this theory is founded the claim that no rescission was attempted until May, 1917. At all events, rescission was not attempted earlier than April 6, 1916, and there is good ground to claim that no proper attempt was made until May, 1917.

V. Appellee says the property was real estate; that it was used only as a residence; that the evidence shows it was in as good condition when the offer to rescind was made as it would have been in if appellee had acted sooner; that it appears that, when appellee left the premises, he locked the house carefully, and that his wife swept it all over, and left it in a clean condition. But, while appellee claims that the premises, at the

3. VENDOR AND PURCHASER: rescission: nonprejudice as avoiding delay.

time when rescission was attempted, or when he abandoned the premises, were in the same condition in which he received them, he does make the qualification, "except usual wear and tear." Upon this comes the ultimate argument:

"The appellant was in the same position if the offer of rescission had been accepted at the time the rescission was made, as at any previous time."

Appellee argues that, in some of the cases cited by appellant, personal property more or less perishable, and the ownership of which was constantly changing, were involved. To that argument we have just spoken. He argues further that, because he locked the house when he left it, and it was swept and left clean, and because there was no depreciation except usual wear and tear, therefore appellant cannot claim that he had been put in worse position by delay, or that he had not received the property back in the condition that it was when appellee took possession of it. The concluding assertion is:

"The appellant was in the same position he would have been if the offer of rescission had been accepted at the time the rescission was made as he has been at any previous time."

The alleged fraud was discovered early in the year 1915. No tender of rent was made until May, 1917, and then only after suit had been begun by plaintiff. No offer to pay for wear and tear was ever made. There was, therefore, no offer to place the defendant *in statu quo*. If the argument made is sound, it might be made with equal force if plaintiff had retained possession for five or six years more, making no change except such as is occasioned by "usual wear and tear." Not only is prejudice presumed from such long delay as exists here, but it is self-evident that there was prejudice. First, there was the usual wear and tear. Second, the retaining the property was necessarily an interference with the right to sell, or exercise dominion over it.

And, so far as waiver is concerned, the basis of the law is not prejudice. The rule there rests on the reasoning that, where one voluntarily elects to carry out a contract, and to

retain possession or benefits under it, he has conclusively elected to seek compensation for the fraud by suit for damages; has elected to affirm the contract, and to place himself, with reference to the fraudulent representations, precisely as though he had accepted his bargain and demanded that he should have the full benefit of it by retaining the property, and have added to this such damages as will put him in the same position he would have been in had the representation been true. See *Bean v. Bickley*, 187 Iowa 689.

On March 31, 1915, when plaintiff made the last payment of $100, he knew, or ought to have known, of all the facts and things of which he is now complaining; and, if this is so, there is both ratification and waiver.—*Reversed.*

4. VENDOR AND PURCHASER: ratification of contract.

Weaver, C. J., Evans and Preston, JJ., concur.