FIRST NATIONAL BANK OF ALTA, Appellant, v. JOE BENSENE, Appellee.

**BILLS AND NOTES:** Holdership in Due Course—Repeated Renewals— Effect. The maker of a negotiable promissory note who repeatedly renews the note in the hands of a transferee, with full knowledge of the fraud perpetrated upon him in the execution of the original note, and with like knowledge, necessarily, that an agreement that the original note should not be transferred, had been violated, thereby irrevocably waives his right to rescind the transaction out of which the original note grew. (See Book of Anno., Vol. 1, Sec. 9518, Anno. 10 *et seq.*)

Headnote 1: 8 C. J. p. 444; 14 C. J. p. 594.

*Appeal from Buena Vista District Court.*—F. C. DAVIDSON, Judge.

DECEMBER 15, 1925.

ACTION at law upon three promissory notes. The defense was that the notes in suit were given by the defendant in renewal of an indebtedness incurred in the purchase of corporation stock, and that the original notes given by the defendant for such stock were obtained from him by fraudulent representa-

tions, and that the defendant afterwards rescinded the purchase. The jury rendered a verdict for the defendant, upon which judgment was entered, and the plaintiff appeals.—*Reversed.*

*Whitney & Whitney,* for appellant.

*Bailie & Edson* and *Healy & Breen,* for appellee.

EVANS, J.—It appears from the record that, on October 2, and again on December 13, 1919, the defendant purchased certain corporation stock of the Cement Products Company of Spencer, Iowa, and gave his notes therefor. These notes were sold for value to the plaintiff. As they fell due in the plaintiff's hands, each note respectively was taken up by the defendant by executing and delivering his renewal note therefor. Later renewals were made successively of each note, the interest being paid by the defendant, and partial payments on the principal being made by him. This suit being brought by the plaintiff, the defendant purported to rescind the contract of purchase of the stock, on the ground of fraud, and thereafter pleaded such rescission as a defense to the present notes. The question now presented for our consideration is whether the defendant had by previous conduct lost the right of rescission. The fraudulent representations charged by the defendant may be summarized as follows:

(1) That the corporation owned all the property which it operated, including the real estate.

(2) That the stock was valuable, and worth $125 per share, and that the stock paid 10 per cent dividend, and had paid as high as 16 per cent dividend.

(3) That the corporation had no indebtedness.

The defendant charged that these representations were made by the stock salesman and by one Anderson, a director and vice president of the plaintiff-bank. The financial condition of the corporation in question for the several years of its existence was shown by the witness Radford, who was called as a witness by both parties, and his testimony was accepted without dispute. It appears that this company operated four plants, viz.: at Spencer, at Sac City, at Mason City, and at Lanesboro in the same county. The falsity of representation was specified as follows:

That the land occupied by the plant at Lanesboro was leased only, and not owned; that the company had never paid a dividend of 16 per cent; that, in December, 1919, the company carried an indebtedness of nearly $400,000. The testimony of Radford shows that, for many years, and up to 1920 and 1921, the corporation had been successful and profitable in its operation; that it had paid a cash dividend regularly, up to and including the first part of the year 1920, being a quarterly dividend of 2½ per cent; that at one time its undivided profits amounted to more than 150 per cent, which were distributed as a stock dividend; that the principal business of the corporation was the manufacture and sale of cement tile; and that its net sales amounted approximately to half a million dollars annually. The statement of its condition in December, 1919, showed $49,000 cash in bank, and $52,000 of undivided profits, over and above all liabilities, including all capital stock issued. Its liabilities on current accounts amounted to approximately $400,000. As against this, its current accounts and notes receivable amounted to more than $500,000. This statement of the financial condition of the company was sent at the close of the year to each stockholder, including the defendant. Likewise, at the close of the year thereafter, a statement of the financial condition of the corporation was sent to every stockholder. The testimony of this witness shows also that the payment of dividends ceased in May, 1920, and none had been paid since that date. The explanation made by the witness was that the business depression which came upon the country in 1920 and 1921 stopped all demand for their product. Their principal effort thereafter was to sell the product on hand, rather than to manufacture more. The plants are all maintained and kept ready to resume their manufacturing, whenever a demand can be found for their product. The defendant must be held to have known the facts here recited, long prior to the date of his attempted rescission, April 24, 1923. He must be held to have known them, also, long prior to the execution of the notes in suit. Whether the representations specified by him were false or not, we need not now consider. The financial statements sent to him disclosed to what extent they were true, and in what respects they were false, if such. One of the contentions of the defendant is that he de-

livered the original notes conditionally; and that the condition was that they should be used as collateral, and should not be transferred. It being assumed, but not conceded, that such an agreement amounted to a conditional delivery, the fact remains that the corporation did sell the notes to the plaintiff, and that they were presented, when due, to the defendant, and that he obtained an extension of time by executing renewal notes therefor. Successive renewals were made, and successive extensions of time obtained, to a total number of fourteen times. Nothing could be clearer than that he thereby waived the condition, if any. It further appears that, in December, 1921, the defendant brought an action against Anderson, charging him with the fraud which resulted in his purchase of the stock, and demanding from him the recovery of the purchase price. This suit was pending in the district court for some period of time, and was withdrawn by the defendant. *Thereafter* he executed the notes in suit herein, and obtained another extension of time thereby. In avoidance of the natural effect of his conduct, the defendant puts forward the claim that Anderson, a vice president and director of the bank, was a party to the fraud, and that, at the time of some of the renewals, Brown, the president of the bank, assured him that the corporate stock was all right. If these facts were otherwise sufficient to avoid the ratifying effect of the defendant's conduct, yet it appears also that both Anderson and Brown had ceased all connection with the bank prior to the execution of the notes in suit. Anderson never was an executive officer of the bank, although defendant's pleading charged him as such. That the right of rescission, if any he ever had, had been fully lost to the defendant, is beyond fair debate. *Spitler v. Perry Town Lot & Imp. Co.,* 189 Iowa 709; *Farmers & Merch. Sav. Bank v. Jones,* 196 Iowa 1071; *Grimes Sav. Bank v. McHarg,* 197 Iowa 1393.

The sole authority relied on by the defendant in support of the judgment below is *Anthon State Bank v. Bernard,* 194 Iowa 1090. That case has been overruled. See *Grimes Sav. Bank v. McHarg,* supra.

The plaintiff's motion for a directed verdict ought to have been sustained. That being overruled, the plaintiff's motion for

judgment notwithstanding the verdict ought to have been sustained.

The judgment below is, accordingly,—*Reversed.*

STEVENS, ALBERT, and MORLING, JJ., concur.